```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
FELIX RODRIGUEZ,

                Plaintiff,
                                        MEMORANDUM AND ORDER
         - against -
                                           16 Civ. 9604 (NRB)
NEW YORK CITY DEPARTMENT OF
HOMELESS SERVICES SERGEANT
CHRISTOPHER ROBINSON,

                Defendant.
---------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Felix Rodriguez ("plaintiff" or "Rodriguez") brought this action against New York City Department of Homeless Services Sergeant Christopher Robinson ("defendant" or "Robinson"), alleging that Robinson used excessive physical force in connection with an incident that took place on July 2, 2016 at a BRC homeless shelter where Rodriguez was then a resident.[1] At the one-day bench trial, three witnesses testified: plaintiff; defendant; and NYCDHS Officer Vernon Carter. The parties thereafter submitted post-trial proposed findings of fact and conclusions of law.

---

[1] BRC appears to stand for "Bowery Residents' Committee," which is a non-profit homeless services organization that contracts with the New York City Department of Homeless Services ("NYCDHS"). While plaintiff originally filed suit against the City of New York, see ECF No. 20, only NYCDHS Sergeant Christopher Robinson remains a defendant in this action.

Based on the Court's evaluation of the testimony, including the credibility of the witnesses, and the evidence introduced at trial, the Court concludes that plaintiff has failed to meet his burden of proving his excessive force claim by a preponderance of the credible evidence. Pursuant to Federal Rule of Civil Procedure 52(a)(1), this Memorandum and Order constitutes the Court's findings of fact and conclusions of law.[2]

I. **Discussion**

    A. **Findings of Fact**

It is undisputed that on July 2, 2016, plaintiff was involved in an incident involving defendant NYCDHS Sergeant Christopher Robinson at the BRC homeless shelter known as the Jack Ryan Residence ("JRR"). While the parties agree that the incident began upon plaintiff's return to the JRR after plaintiff had visited a friend in Brooklyn, the parties present widely divergent accounts of what then took place.

Rodriguez maintains that while he was waiting to go through security at the JRR, Robinson, who was located on the other side of the magnetometer near the facility's entrance, began insulting

---

[2] "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1).

and disrespecting him. ECF No. 61 ¶ 9. Rodriguez testified that upon being approached by Robinson, Rodriguez spat at Robinson's chest area, at which point Rodriguez claims that Robinson grabbed him by the shirt, pushed him to the ground, and handcuffed him behind his back. ECF No. 61 ¶¶ 11-13. Rodriguez maintains that after he was handcuffed, Robinson escorted Rodriguez to the lower level of the shelter where Robinson pushed Rodriguez to the ground and punched and kicked him repeatedly on the right side of his body. ECF No. 61 ¶¶ 18-20. Plaintiff testified that he felt as though he was kicked 20 to 30 times, for approximately 30 minutes, ECF No. 55 at 41-32; ECF No. 55 at 131, and that during the assault Robinson knocked his glasses off and stomped on them, ECF No. 55 at 45. According to plaintiff, no one other than Robinson was present during the purported beating. ECF No. 61 ¶ 22. As a result of the alleged beating, plaintiff claims to have sustained severe pain for several days, ECF No. 61 ¶¶ 46-47, as well as pain resulting from the tightness of the handcuffs, ECF No. 61 ¶ 51. At trial, in addition to his own testimony, plaintiff introduced medical records and photographs purporting to show his resulting injuries. See Pl.'s Ex. A; G-I.

By contrast, defendant maintains that upon returning to the JRR, plaintiff refused to cooperate with the facility's search

procedures, slammed the search bucket, and yelled at and threatened officers who were present in the security area, including Carter.[3] ECF No. 60 ¶ 11; ECF No. 55 at 105. According to defendant's evidence, it was only after Rodriguez displayed aggressive behavior and refused Carter's commands to comply with the JRR's search procedures that Robinson was informed of plaintiff's disorderly conduct and responded to the area. ECF No. 60 ¶ 15. Robinson testified that in response to his efforts to determine what had been happening in the search area, Rodriguez threatened him and used racial epithets against him. ECF No. 60 ¶ 18.

According to defendant's evidence, Rodriguez was not handcuffed when Robinson and Carter escorted him to the JRR's command center.[4] ECF No. 60 ¶ 21. Robinson testified that Rodriguez did not spit on him until they were in the command center, and that it was only after Rodriguez spat on him and continued to display aggressive and threatening behavior that Rodriguez was handcuffed. ECF No. 60 ¶¶ 22-24. While Robinson testified that he assisted Officer Carter in placing Rodriguez in handcuffs due to plaintiff's resistance, he testified that he at

---

[3] On July 2, 2016, Carter was employed by the Department of Homeless Services and was regularly assigned to the JRR. ECF No. 55 at 103.

[4] Officer Carter described the "command center" as "the area where the client waits if going to the hospital or to be arrested." ECF No. 55 at 106.

no point kicked plaintiff on any part of his body. ECF No. 60 ¶¶ 25-26. Officer Carter likewise testified that he was present at all relevant times and that Robinson did not in any way physically assault Rodriguez. ECF No. 55 at 109.

Finally, Robinson testified that either he or Officer Carter called EMS after observing plaintiff repeatedly bang his head against the wall, out of concern that plaintiff could cause harm to himself and/or to others. ECF No 55 at 87. When EMS arrived, plaintiff's handcuffs were removed and plaintiff was taken by ambulance to Bellevue Hospital. ECF No. 60 ¶¶ 33, 35.

The parties do not dispute that plaintiff returned to the JRR upon being discharged from Bellevue that evening. There is also no dispute that plaintiff went to Lutheran Medical Center on July 5, 2016 (i.e., three days after the subject incident), and that after the July 5 appointment plaintiff did not seek further medical treatment in connection with the alleged assault.

\* \* \*

The Court finds defendant's version of events to be the credible one, based not only on its observation of the witnesses, but also upon the objective physical evidence introduced at trial.

As a preliminary matter, plaintiff's version of events -- i.e., that he was brutally assaulted by Robinson, who kicked him

numerous times, at times with the force of a baseball bat, ECF No. 55 at 47 -- cannot be squared either with plaintiff's contemporaneous medical records or with the photographs that plaintiff introduced at trial. Whereas the assault that plaintiff described would undoubtedly have resulted in serious physical harm, three sets of medical records indicate that plaintiff sustained only superficial injuries from the subject incident.

Specifically, the physical assessment conducted by the EMTs who transported plaintiff to Bellevue Hospital revealed that plaintiff sustained no physical injuries other than "minor redness" to his wrists. Pl.'s Ex. G at 3. Similarly, the only injury documented by Bellevue Hospital staff was abrasion to his left forearm. Pl.'s Ex. H at 9. Perhaps most notably, plaintiff's Bellevue records indicate that a pain assessment was conducted and that plaintiff had "no pain issues at this time." Pl.'s Ex. H at 9. While the pictures introduced at trial portray minor bruising, Pl.'s Ex. A1-A5, such bruises -- which reasonably could have resulted from the struggle between Rodriguez and Officers Carter and Robinson during their attempt to place Rodriguez in handcuffs -- simply are not of the severity that would have resulted from a

brutal and prolonged assault (much less one inflicted by an individual of Robinson's size and stature).[5]

Plaintiff attempts to rely on radiological evidence from his July 5, 2016 evaluation at Lutheran Medical Center showing that plaintiff previously suffered rib fractures. However, such fractures were deemed "age indeterminate" and thus cannot be linked to the purported assault. ECF No. 55 at 58-59. To the contrary, given that (1) the Lutheran Medical Center records revealed that "no bruising [had] appreciated" on plaintiff's ribs, Pl.'s Ex. I; (2) that plaintiff's own photographs similarly did not reveal any bruising to his ribs, Pl.'s Ex. A; (3) that plaintiff's Bellevue Hospital records indicated that plaintiff had "no pain issues," Pl.'s Ex. H; and (4) that, following his July 5 appointment, plaintiff never sought additional treatment relating to his purported rib injuries, ECF No. 55 at 59, any suggestion that the rib fractures were caused by the incident involving Robinson lacks credibility. In short, the discrepancy between the nature of the assault to which plaintiff testified and the actual injuries documented in the contemporaneous medical records and photographs

---

[5] Robinson testified that he is 6 feet 4 inches tall and weighed "between 285 and 320 [pounds]" at the time of the incident. ECF No. 55 at 96-97.

undermine plaintiff's credibility both with respect to his injuries and the nature of alleged assault.

Several other aspects of plaintiff's testimony regarding the July 2 incident undermine plaintiff's credibility. First, despite plaintiff's testimony that he suffered severe pain, plaintiff testified that he could not remember if he ever actually told the EMTs who transported him to the hospital that he was in pain. ECF No. 55 at 49. Second, a photograph taken three days after the incident show plaintiff wearing the very glasses on which Robinson purportedly stomped during the assault. Pl.'s Ex. A-1. Obviously, this fact puts the lie to plaintiff's testimony that Robinson had stomped on them. Third, even if plaintiff's testimony was not deliberately false, the Court would have reason to question the accuracy of plaintiff's recollection of the events that took place on July 2, 2016: Plaintiff testified that he had consumed multiple alcoholic beverages and had taken several prescription medications in the hours leading up to the incident, ECF No. 55 at 39, and that he was still "buzzed" when he returned to the JRR, ECF No. 55 at 15.[6]

---

[6] Plaintiff's testimony is consistent with Officer Carter's testimony that upon arriving at the JRR, plaintiff "appeared intoxicated," was "stumbling," and had "slurred speech." ECF No. 55 at 104-05.

**B.  Conclusions of Law**

"[T]o sustain a claim for excessive force, the Plaintiff must establish through evidence, that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable."  Rincon v. City of New York, No. 03 Civ. 8276 (LAP), 2005 WL 646080, at *4 (S.D.N.Y. Mar. 21, 2005) (quoting United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)).  In the context of an excessive force claim, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment."  Graham v. Connor, 490 U.S. 386, 396 (1989) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).  "[A] de minimis use of force will rarely suffice to state a constitutional claim."  Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).  See also Washpon v. Parr, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008) ("A line of cases holds that minor injuries that result from tight handcuffs, such as temporary swelling, inflammation or soreness of an arrestee's wrists, are insufficient on their own to sustain a Fourth Amendment excessive force claim.").

Defendant does not dispute that a minimal amount of force was required to place plaintiff in handcuffs and thereby subdue his behavior.  While the minimal evidence of injury introduced at

trial (e.g., photographs of minor bruising) is consistent with a small amount of force having been utilized during a struggle to place plaintiff in handcuffs, such force cannot credibly be described as excessive. Accordingly, plaintiff has failed to satisfy his burden of proving his excessive force claim by a preponderance of the evidence.

## II. Conclusion

For the foregoing reasons, judgment shall be entered in favor of defendant, dismissing the case with prejudice. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: New York, New York
March 24, 2020

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE